1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   JENNIFER CHOU (Cal. Bar No. 238142)
4  Assistant United States Attorney
   Violent & Organized Crime Section
5       1300 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone:  (213) 894-6482
7       Facsimile:  (213) 894-3713
        E-mail:     jennifer.chou@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10               UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 UNITED STATES OF AMERICA,          CR No. 22-253-RGK

13              Plaintiff,            GOVERNMENT'S SENTENCING POSITION
                                      FOR DEFENDANT STEVO MIJANOVIC
14              v.
                                      Hearing Date: 6-26-2023
15 STEVO MIJANOVIC,                   Hearing Time: 10:00 A.M.

16              Defendant.

17

18

19        Plaintiff United States of America, by and through its counsel

20 of record, the United States Attorney for the Central District of

21 California and Assistant United States Attorney Jennifer Y. Chou,

22 hereby files its sentencing position as to defendant STEVO

23 MIJANOVIC.

24 //

25 //

26 //

27

28

1      This sentencing position is based upon the attached memorandum

2  of points and authorities, the files and records in this case, and

3  such further evidence and argument as the Court may permit.

4  Dated: June 12, 2023           Respectfully submitted,

5                          E. MARTIN ESTRADA
                          United States Attorney

6

7                          MACK E. JENKINS
                          Assistant United States Attorney
                          Chief, Criminal Division

8

9                                     /s/
                          JENNIFER CHOU
10                        Assistant United States Attorney

11                        Attorneys for Plaintiff
                        UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Defendant STEVO MIJANOVIC ("defendant") pleaded guilty on March 6, 2023, pursuant to a plea agreement, to counts six and eight of the indictment, which charge defendant with robbery, in violation of 18 U.S.C. § 1951(a), and count seven, which charges defendant with brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

On May 19, 2023, the Probation Office disclosed the Presentence Report ("PSR").  The PSR's calculations regarding the applicable United States Sentencing Guidelines, Nov. 1, 2021 ed. ("U.S.S.G." or "Sentencing Guidelines") as to counts six and eight are set forth at paragraphs 37 to 105 of the PSR.  The PSR's calculations differ slightly from the parties' stipulated calculations set forth in paragraph 16 of the plea agreement in two ways, discussed further below.  Pursuant to paragraph 16 of the plea agreement, which acknowledges the parties' right to argue for the application of additional specific offense characteristics, the government concurs with the PSR's calculated Guidelines as follows:

Group 1: Pregio Robbery

| | | | |
|---|---|---|---|
| Base Offense Level | : | 20 | [USSG § 2B3.1(a)] |
| Brandished Dangerous Weapon | : | +3 | [USSG § 2B3.1(b)(2)(E)] |
| Group 1 Offense Level | : | 23 | |

Group 2: Dollar Tree Robbery

| | | | |
|---|---|---|---|
| Base Offense Level | : | 20 | [USSG § 2B3.1(a)] |
| Brandished Dangerous Weapon | : | +3 | [USSG § 2B3.1(b)(2)(E)] |
| Group 2 Offense Level | : | 23 | |

Group 3: Pollo Lico Robbery

   Base Offense Level      :   20   [USSG § 2B3.1(a)]

    Brandished Firearm     :   +5   [USSG § 2B3.1(b)(2)(C)]

    Group 3 Offense Level  :   25

Group 4: Subway Robbery

   Base Offense Level      :   20   [USSG § 2B3.1(a)]

   Brandished Firearm     :   +5   [USSG § 2B3.1(b)(2)(C)]

   Restraint            :   +2   [USSG § 2B3.1(b)(4)]

    Group 4 Offense Level  :   27

Group 5: La Michoacana Ice Cream
    Attempted Robbery

   Base Offense Level      :   20   [USSG § 2B3.1(a)]

   Otherwise Used Firearm :   +6   [USSG § 2B3.1(b)(2)(C)]

    Group 5 Offense Level  :   26

Group 6: Shell Station Robbery

   Base Offense Level      :   20   [USSG § 2B3.1(a)]

    Group 6 Offense Level  :   20

Group 7: Mi Pueblito Robbery

   Base Offense Level      :   20   [USSG § 2B3.1(a)]

   Otherwise Used Firearm :   +6   [USSG § 2B3.1(b)(2)(C)]

    Group 7 Offense Level  :   26

Group 8: Chevron Station Robbery

   Base Offense Level      :   20   [USSG § 2B3.1(a)]

   Otherwise Used Firearm :   +6   [USSG § 2B3.1(b)(2)(C)]

    Group 8 Offense Level  :   26

Group 9: 7-Eleven Robbery

   Base Offense Level      :   20   [USSG § 2B3.1(a)]

   Otherwise Used Firearm :   +6   [USSG § 2B3.1(b)(2)(C)]

    Group 9 Offense Level  :   26

Grouping Adjustment

        Highest Group Level        :    27

        Grouping Adjustment        :    +5    [USSG § 3D1.2(d)]

        Early Acceptance of
        Responsibility             :    -3    [U.S.S.G. § 3E1.1]

        Total Offense Level        :    29

PSR ¶¶ 37-105.

        The government also concurs with the PSR's determination that defendant has four criminal history points and a criminal history category of III (PSR ¶ 110-15), which results in an applicable Guidelines range of 108-135 months, plus a 7-year mandatory consecutive sentence for the conviction in count seven for brandishing a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

        For the reasons set forth below, the government recommends that the Court impose the following sentence: a term of imprisonment of 15 years, or 180 months, which consists of a sentence of 96 months to run concurrently for counts six and eight, followed by the mandatory consecutive 84-month sentence for count seven, followed by a five-year term of supervised release to include the stipulated provision that subjects defendant to suspicionless search, a mandatory special assessment of $100, and mandatory restitution in the total amount of $2,733.  Based on defendant's lack of income and assets the government recommends that all fines be waived.

**II.  SENTENCING GUIDELINES**

        The government concurs with the PSR's Guidelines calculations, which differ from the stipulated calculations in two ways.

        First, the PSR adds a three-level enhancement for brandishing a dangerous weapon to the pseudo counts for Count 1 (Pregio Pizza

3

robbery) and Count 2 (Dollar Tree robbery) because the toy pistol defendant admitted carrying (rather than the actual revolver he used in the later robberies) was "an object that is not an instrument capable of inflicting death or serous bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument." See Plea Agreement § 14; PSR ¶¶ 13-14 (describing offense conduct); PSR ¶¶ 37-52 (citing USSG § 2B3.1(b)(2)(E) (two-level increase for brandishing dangerous weapon); id. at § 1B1.1 n.1(E) (defining "dangerous weapon")).

Second the PSR applies a two-level enhancement to pseudo count 4 for the Subway restaurant robbery because when defendant ordered one victim employee (victim K.P.) at gunpoint to walk behind the counter to open the register, he "physically restrained" the victim "to facilitate commission of the offense." PSR ¶ 63 (citing United States v. Thompson, 109 F.3d 639, 641 (9th Cir. 1997)); see Exhibit A (redacted excerpt of police report of Subway robbery). The government concurs. Defendant brandished the handgun and told victim K.P. "Give me all your money," then "walked with K.P. behind the counter to the cash register." Ex. A. Forcing K.P. to walk behind the counter constitutes the "sustained focus on a restrained person that lasts long enough for the robber to . . . order the victim to walk somewhere." See United States v. Albritton, 622 F.3d 1104, 1107-08 (9th Cir. 2010) (emphasis omitted) (quoting United States v. Parker, 241 F.3d 1114, 1118 (9th Cir. 2001)).

## III. ANALYSIS OF THE SECTION 3553(A) FACTORS

The government submits that the factors set forth at 18 U.S.C. § 3553(a) would be fulfilled by a sentence of no more than 15 years,

4

which is one year less than the low end of the applicable Guidelines

sentencing range, adjusted to include the 7-year consecutive

sentence for count seven.  The § 3553(a) factors justify the slight

variance and the 15-year sentence.

**A.   18 U.S.C. § 3553(a)(1)**

Section 3553(a)(1) requires the Court to consider the nature

and circumstances of the offense and the history and characteristics

of defendant.  Here, defendant committed six armed robberies, one

attempted armed robbery, and two robberies in which he brandished

what appeared to be a firearm.  He terrorized victim employees and

bystanders at each location, using fear to obtain money from the

victim businesses.  As victim J.H. relayed in her victim impact

statement, she was pregnant when defendant pointed a gun toward her

and demanded that she open the register to give him money during the

robbery of the Shell gas station.  See PSR ¶ 18; see also Ex. B

(redacted excerpt of police report of Shell robbery); Ex. C (screen

still from surveillance video recording of Shell robbery).  Victim

J.H. miscarried shortly after the robbery, which she believes

resulted from the fear and stress of the robbery.  See Ex. D (J.H.

Victim Impact Statement).  As J.H. relayed in her statement:

> [O]n the day of the incident she thought she was going to
> be killed.  The victim said it was the scariest moment of
> her life.  The victim said that the fear and stress
> resulted in a miscarriage.  At the time she was pregnant
> for more than a month.  The victim said the robbery
> changed her.  The victim said the only time she feels safe
> is when she is at home.  When the victim is at work, she
> is apprehensive when customers come in and she will step
> away from behind the counter, out of fear.  The victim
> said she is still fearful anxious, and expressed an
> interest in obtaining professional counseling/treatment.

Ex. D at 1.  Moreover, J.H. "believes [defendant] will continue to commit robberies and she is fearful he may again target her workplace" if defendant is "released."  Id. at 3.

Defendant's criminal history shows a long pattern from an early age of using force or fear to obtain property from others.  In mitigation, it appears that defendant's criminal behavior is driven in part by his lack of housing or stable family support and his need to pay for food, clothing, and drugs to feed an ongoing long-term addiction.  A 15-year sentence is sufficient but no greater than necessary to address this factor.

**B.   18 U.S.C. § 3553(a)(2)**

Section 3553(a)(2) requires the Court to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of defendant, and to provide defendant with any needed training and treatment.  These factors also support a sentence of 15 years' imprisonment.  This sentence is sufficiently lengthy to protect the public and to deter defendant from committing future crimes.  The sentence may also serve as a general deterrent to similarly-situated potential offenders.  The sentence will also provide defendant with much-needed mental health and substance abuse treatment, as well as offering vocational and educational training to provide job skills for post-release opportunities.  The 5-year period of supervised release will also offer him transitional and ongoing support upon his release from custody.

1      **C.    18 U.S.C. § 3553(a)(6)**

2          18 U.S.C. § 3553(a)(6) requires the Court to minimize

3      sentencing disparity among similarly situated defendants.  Using the

4      Sentencing Guidelines to sentence defendant accomplishes this goal.

5      Similarly situated defendants with the same criminal history would

6      likely receive a sentence within the same range.  See United States

7      v. Saeteurn, 504 F.3d 1175, 1181 (9th Cir. 2007) ("Our sister

8      circuits generally agree that 'Congress's primary goal in enacting

9      § 3553(a)(6) was to promote national uniformity in sentencing rather

10     than uniformity among co-defendants in the same case.'") (citations

11     omitted).  Here, the recommended sentence falls within the

12     applicable Guidelines.  A similarly-situated defendant would be

13     subject to the same sentencing range.

14     **D.    THE REMAINING 3553(a) FACTORS ALSO SUPPORT THE SENTENCE**

15     **REQUESTED BY THE GOVERNMENT**

16         18 U.S.C. § 3553(a)(3) requires the Court to consider the kinds

17     of sentences available.  A 15-year period of imprisonment, followed

18     by a 5-year period of supervised release, is a fair sentence, given

19     the scope of potential harm of defendant's offense, and provides

20     punishment that is sufficient but not greater than necessary to

21     address the offense.

22         18 U.S.C. § 3553(a)(4) & (5) now merely require the Court to

23     take the sentencing Guidelines as "advisory."

24     **IV.  THE STIPULATED SEARCH CONDITIONS SHOULD BE IMPOSED**

25         Defendant has stipulated to a condition of supervised release

26     related to suspicionless search.  See Plea Agreement ¶ 2(h).

27         Suspicionless search conditions both protect the public and

28     deter recidivism, as offenders know that the chance of detection of

1   any criminal conduct is greater.  The Ninth Circuit has upheld the

2   imposition of suspicionless search conditions of supervised release.

3   See United States v. Betts, 511 F.3d 872, 876 (9th Cir. 2007)

4   (affirming suspicionless search condition in part because "the

5   public is entitled to protection against the possibility" of

6   recidivism); United States v. Tafelmeyer, 584 F. App'x 766, 767 (9th

7   Cir. 2014) ("The district court did not abuse its discretion in

8   imposing [a suspicionless search] condition of release because the

9   condition reasonably furthers the goals of deterrence, protection of

10  the public, and rehabilitation of the offender.") (citations and

11  quotations omitted).

12      The Supreme Court has similarly upheld suspicionless search

13  conditions on all parolees in California:

14

15      California's ability to conduct suspicionless searches of
        parolees serves its interest in reducing recidivism, in a
        manner that aids, rather than hinders, the reintegration

16      of parolees into productive society.

17  Samson v. California, 547 U.S. 843, 854 (2006).

18      Although the advisory Sentencing Guidelines recommend that

19  search conditions require reasonable suspicion, see U.S.S.G.

20  § 5D1.3(d)(7)(C), imposition of such conditions is both better

21  policy and better practice, especially for this defendant.  First,

22  as both the Ninth Circuit and Supreme Court have held, it is the

23  risk that those on supervision could be searched at any time, for

24  any or no reason, that deters those offenders from possessing

25  contraband or engaging in new criminal conduct, and therefore

26  promotes rehabilitation and public safety.  Conditioning searches

27  upon a showing of reasonable suspicion makes them less likely and

28  therefore less effective.  Indeed, Samson rejected the argument that

8

reasonable suspicion should be required before an officer could make use of a search condition and criticized such restrictions for undercutting the safety and deterrence benefits suspicionless search conditions create, as the Ninth Circuit also recognized that "'[i]mposing a reasonable suspicion requirement . . . would give parolees greater opportunity to anticipate searches and conceal criminality.'"  Betts, 511 F.3d at 876 (quoting Samson).

Additionally, a search condition that requires reasonable suspicion will result in confusion because it is contrary to California's search condition scheme, and the overwhelming majority of law enforcement officers in our district has been trained in the state scheme.  By state statute, all parolees are subject to "search or seizure by a probation or parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause."  Cal. Penal Code § 3067(b)(3) (emphasis added).  There are well over 100,000 California released parolees subject to this condition.  Samson, 547 U.S. at 853 ("As of November 30, 2005, California had over 130,000 released parolees.").  Given the uniformity of California's suspicionless search scheme, and the overwhelmingly larger numbers of state officers and state parolees, search conditions for federal and state supervisees should be consistent.

In order to make the proposed search condition effective, law enforcement officers must know that defendant is subject to search.  The stipulated condition requires defendant to notify any law enforcement officer that he is on federal supervised release and subject to search.

A condition allowing for suspicionless searches is particularly important for this defendant, who possessed a firearm that he used to commit armed robberies, does not appear to have a fixed residence that can be monitored when he is released from custody, and is a daily drug user. In all, the case for imposing a suspicionless search condition on this particular defendant is much stronger than it was in other cases in which those conditions have been affirmed by the Supreme Court or Ninth Circuit. See, e.g., Samson, 547 U.S. 843 (affirming blanket suspicionless search condition on all California parolees; Betts, 511 F.3d 872 (affirming suspicionless search condition on first-time offender whose crime — taking bribes to delete negative credit information from Transunion's database — would be difficult to detect by search).

The government hopes that the suspicionless search conditions will have the desired deterrent effect, particularly because defendant has lived the consequences of non-compliance. Moreover, knowing he is subject to suspicionless search at any time of day or night should act as a more effective deterrent than a condition based on reasonable suspicion — that is, a condition that makes no distinction between him and someone who does not have a proven history of engaging in armed robberies, burglaries, and drug use.

## V.   RESTITUTION

Defendant admitted that he obtained a total of $2,733 from the eight victim businesses he robbed. As set forth in the PSR, the losses are as follows:

| Victim Name | Amount of Loss |
|---|---|
| Pregio Pizza | $80.00 |
| Dollar Tree | $138.00 |

| Pollo Lico | $585.00 |
|---|---|
| Subway | $150 |
| Shell | $180.00 |
| Mi Pueblito Restaurant | $1,000.00 |
| Chevron | $300.00 |
| 7-Eleven | $300.00 |

PSR ¶ 176; see Plea Agreement ¶ 14 (describing loss amounts from each victim).  At this time, none of the victim businesses have submitted restitution requests or provided contact information. Should a victim provide that information to the Clerk's office or the Probation Office, restitution should be paid accordingly. Accordingly, the Court should order restitution as set forth above.

**VI.   CONCLUSION**

For all the foregoing reasons, the factors set forth in 18 U.S.C. § 3553(a) support the imposition of a sentence of 15 years imprisonment, followed by a 5-year period of supervised release, mandatory restitution in the total amount of $2,733, and a special assessment of $100.

11